**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HOMELITE, a division of Deere &
Company,
Petitioner,

v.

OCCUPATIONAL SAFETY & HEALTH

No. 94-2588

ADMINISTRATION,
Respondent.

AMERICAN PULPWOOD ASSOCIATION,
INCORPORATED,
Amicus Curiae.

On Petition for Review of an Order
of the Occupational Safety and Health Administration.
(No. S-048)

Argued: December 8, 1995

Decided: January 17, 1996

Before MURNAGHAN, WILLIAMS, and MICHAEL,
Circuit Judges.

_____

Denied by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gary E. Cross, DUNAWAY & CROSS, P.C., Washington, D.C., for Petitioner. Ann Rosenthal, Counsel for Appellate Litigation, Office of the Solicitor-OSH, UNITED STATES

DEPARTMENT OF LABOR, Washington, D.C., for Respondent.
**ON BRIEF:** Mac S. Dunaway, DUNAWAY & CROSS, P.C., Washington, D.C., for Petitioner. Thomas S. Williamson, Jr., Solicitor of Labor, Joseph M. Woodward, Associate Solicitor for Occupational Safety and Health, Barbara A.W. McConnell, Office of the Solicitor-OSH, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent. Kenneth R. Pierce, Michael B. Weir, Chet A. Kronenberg, CHADBOURNE & PARKE, L.L.P., New York, New York, for Amicus Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Homelite, a Division of Deere & Company, petitions for review of a final safety standard applicable to all logging operations promulgated by the Occupational Safety and Health Administration (OSHA) pursuant to § 655(b) of the Occupational Safety and Health Act of 1970, 29 U.S.C.A. §§ 651-678 (West 1985 & Supp. 1995). Specifically, Homelite challenges OSHA's requirement that all chain saws used by professional loggers be equipped with a chain brake. See 59 Fed. Reg. 51,672, 51,743 (1994) (to be codified at 29 C.F.R. § 1910.266(e)(2)(i)). Because we conclude that substantial evidence supports OSHA's chain brake requirement, we deny the petition for review.

I.

In terms of injury and fatality rates, logging is among the more dangerous occupations in this country. See 59 Fed. Reg. 51,672, 51,673-80 (1994). Loggers face a wide variety of hazards arising from their working conditions and the equipment that they use. In particular, gruesome injuries occur when an operating chain saw "kicks

2

back" and strikes a logger. "Rotational kickback" occurs when the cutting chain near the upper portion of the tip of the guide bar (the part of the saw that supports the chain and guides it into the wood) contacts an obstruction, such as a nail or an untrimmed branch, causing the saw to move rapidly upward and backward toward the operator. "Pinch (or linear) kickback" occurs when the wood closes in on the long edge of the cutting chain, pushing the saw toward the operator. While a chain saw can kick back in less than 0.3 of a second, the average operator's reaction time is 0.75 of a second. Loggers often cannot react quickly enough to avoid being struck by the chain saw.

Four safety devices have been developed to reduce or minimize the risk of injury from chain-saw kickback. See id. at 51,690-91. Bar tip guards (or nose tip guards) are wedge-shaped devices bolted or screwed onto the guide bar and shield the tip of the chain saw from the types of obstructions that cause rotational kickback. Reduced-kickback guide bars, which are narrower at the tip than regular guide bars, reduce the likelihood of chain contact where kickback most often occurs. Low- or reduced-kickback chains have idler or spacer links between the cutting links of the chain that limit the force of kickback. Chain brakes, located inside the engine of the chain saw, are designed to stop the chain before the chain strikes the operator when kickback occurs.

In 1985, a committee of the American National Standards Institute (ANSI) set forth a voluntary industry standard for the manufacture of chain saws. See Gasoline-Powered Chain Saws-- Safety Requirements, ANSI Standard B175.1 (1985) (ANSI B175.1). ANSI B175.1 requires manufacturers to equip chain saws with an engine size smaller than 3.8 cubic inches of displacement with any two of the four kickback safety devices. In addition, such saws must pass a performance test involving the saw's computed kickback angle (CKA). Chain saws with an engine size of 3.8 cubic inches of displacement and larger, however, are required to have only one kickback safety device and need not pass a CKA test. ANSI B175.1 also provides that the average stopping time for a chain brake must not exceed 0.12 of a second and no single stopping time may exceed 0.15 of a second.

On May 2, 1989, OSHA published a notice proposing an employee safety standard for all types of logging operations that would replace

3

standards previously applicable only to pulpwood logging. See 54 Fed. Reg. 18,798 (1989) (to be codified at 29 C.F.R. § 1910.266) (proposed May 2, 1989). The proposed standard originally did not require any particular safety device to prevent or reduce kickback injuries; instead, it required frequent inspection of chain saws to ensure "that chainbrakes and all other manufacturer's safety features remain operational." Id. at 18,814. On May 11, 1990, OSHA published notice of public hearings on the proposed standard and requested comment on several issues, including "the adequacy of various chain saw safety devices and guards and the appropriate regulatory action for OSHA." 55 Fed. Reg. 19,745, 19,746 (1990). OSHA conducted two public hearings on its proposed rule and received post-hearing comments until November 21, 1990.

During the rulemaking proceedings, OSHA received comments and heard testimony from individuals involved in the logging industry and from representatives of logging safety organizations. Most commenters either reported that chain brakes had reduced kickback injuries or predicted that chain brakes would reduce kickback injuries if required. Many of these commenters also criticized the protective value of the other safety devices, which were easily removed and tended to interfere with cutting efficiency. The commenters favoring chain brakes based their recommendations on general experience, rather than empirical data. In addition to anecdotal commentary, OSHA received statistics compiled by The State of Maine Bureau of Labor Statistics (Maine BLS) in 1982, which indicated that chain brakes had lessened the effects of kickback injuries. See 59 Fed. Reg. at 51,691.

Some commenters, however, preferred that OSHA adopt the ANSI standard that all chain saw manufacturers had been following because a significantly different standard would disrupt the marketplace. See id. A few commenters disputed the effectiveness of chain brakes, but OSHA determined that their contentions were unsupported by evidence or data. See id. One of these commenters, however, submitted the 1982 Survey of Chain Brake Stopping Time in Eastern Canada by the Forest Engineering Research Institute of Canada (FERIC). The FERIC study indicated that only 25.2% of the saws tested stopped within 0.15 of a second while 19.6% did not stop at all. Although the

4

commenter offered to provide OSHA with additional studies on chain brake failure rates, OSHA never responded to his offer.

The administrative record also included Safe Chain Saw Design, a book published in 1989 by the Institute of Public Safety (IPS). Although not cited by OSHA in the final logging standard, IPS noted that the Canadian Standards Association Committee on Chain Saws, which had initiated the FERIC study, rejected the study's results and continued to advocate chain brakes. IPS also supported the use of chain brakes despite the FERIC study.

On October 12, 1994, OSHA promulgated its final logging standard, which requires that

> [e]ach chain saw placed into initial service after the effective date of this section [February 9, 1995] shall be equipped with a chain brake and shall otherwise meet the requirements of the ANSI B175.1-1991 "Safety Requirements for Gasoline-Powered Chain Saws."

Id. at 51,743 (to be codified at 29 C.F.R.§ 1910.266(e)(2)(i)). Based upon the comments it had received, OSHA concluded that chain brakes should be required because: (1) chain brakes are effective and the most widely used kickback safety device; (2) chain brakes have widespread acceptance by logging professionals and are standard equipment on almost all chain saws; (3) chain brakes lack the disadvantages of other safety devices; (4) other countries require chain brakes; (5) the ANSI standard requires the use of sophisticated equipment and exacting procedures to determine compliance; and (6) the ANSI standard is primarily directed toward chain-saw manufacturers, rather than employers and employees. See id. at 51,692.

The Portable Power Equipment Manufacturers Association (PPEMA), a trade association representing chain saw manufacturers, participated in the rulemaking proceedings and opposed the requirement of any specific kickback protection device. PPEMA and Homelite, one of its member companies, petitioned this Court for review of the logging standard. Subsequently, PPEMA voluntarily withdrew its petition.

5

II.

Upon judicial review of a final standard promulgated by OSHA, "determinations of the Secretary [of Labor] shall be conclusive if supported by substantial evidence in the record considered as a whole." 29 U.S.C.A. § 655(f). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." American Textile Mfrs. Inst. v. Donovan, 452 U.S. 490, 522 (1981) (internal quotation marks omitted). The substantial evidence standard does not require OSHA to prove that the record supports only one possible conclusion; indeed, "[t]he existence of a viable alternative does not preclude the acceptance of an agency determination as supported by substantial evidence." Color Pigments Mfrs. Ass'n v. OSHA, 16 F.3d 1157, 1160 (11th Cir. 1994); see also Bedford County Memorial Hosp. v. Health & Human Servs., 769 F.2d 1017, 1021 (4th Cir. 1985) (stating that "an agency need not pick a theoretical best solution for a problem, but rather, need only implement a reasonable solution"). Therefore, OSHA need only show that its "determination is supported by evidence presented to or produced by it and does not rest on faulty assumptions or factual foundations." Color Pigments Mfrs. Ass'n, 16 F.3d at 1160.

Homelite raises three challenges to OSHA's evidentiary support for the logging standard. Homelite contends that OSHA: (1) lacked relevant statistical data to support the chain brake requirement; (2) failed to consider data indicating that chain brakes were ineffective; and (3) lacked support for requiring both chain brakes and compliance with ANSI B175.1. We reject these arguments and conclude that substantial evidence supports OSHA's chain brake requirement.

Homelite first argues that OSHA could not have relied on its only statistical data, the 1982 Maine BLS study, because it involved only twenty-nine kickback injuries and reported the effects of the presence of chain brakes in all chain-saw accidents, not accidents involving kickback. Nonetheless, the study states that chain brakes "appear[ ] to have played a significant role in lessening the effects of the injury. Basically, the person injured in the kickback accident with the chain brake was less likely to lose time or if the injury were disabling was likely to lose fewer days." (J.A. 252.) Moreover, even if this Court ignored the 1982 Maine BLS study, the numerous comments of chain

6

brake advocates based on their experiences constitute substantial evidence supporting OSHA's determination that all chain saws should be equipped with a chain brake.

Homelite's second contention, that OSHA refused to consider data critical of the performance of chain brakes, is more troublesome. Although some commenters disputed the effectiveness of chain brakes, OSHA stated that none of them had submitted evidence or data supporting their claims. See id. at 51,691. The 1982 FERIC study submitted by one commenter, however, indicated that chain brakes performed dismally under test conditions. OSHA now offers four responses to the study: (1) the committee that initiated the study rejected its results; (2) laboratory tests are less indica tive of effectiveness than the favorable comments based on actual use in the forest; (3) IPS recommended chain brakes despite the study; and (4) no certification program existed in Canada at the time of the study, rendering it impossible to know how many tested saws had been manufactured to stop the chain within 0.15 of a second.

Although OSHA probably should not have waited until this petition to defuse the results of the FERIC study, OSHA need not discuss and defeat every comment contrary to the chosen standard, provided its conclusion is supported by "such relevant evidence as a reasonable mind might accept as adequate." American Textile Mfrs. Inst., 452 U.S. at 522. The majority of commenters, who based their recommendations on years of experience, advocated chain brakes and criticized the effectiveness of other safety devices. Thus, OSHA reasonably could have discounted the single FERIC study, the results of which were discredited by other materials in the administrative record.*

Finally, Homelite contends that OSHA lacked support for requiring both chain brakes and compliance with ANSI B175.1, thereby establishing different safety standards for larger and smaller chain saws

_____

*Homelite also argues that chain brakes are ineffective and impractical because loggers cannot determine whether the chain brake is working properly, i.e., whether it will stop the chain quickly enough to avoid an injury. The factual basis for this concern, however, is contradicted in the administrative record by the many commenters who reported fewer and less serious kickback injuries when chain brakes were used.

7

used by loggers. Homelite asserts that it is illogical to require a more stringent standard for smaller saws than larger saws and that OSHA simply did not consider the full effect of incorporating ANSI B175.1 by reference. Some commenters, however, warned OSHA that adopting standards significantly different from ANSI B175.1 would disrupt the marketplace because all chain saw manufacturers had been following the ANSI standard. See id. at 51,691-92. Moreover, OSHA reasonably could have determined that incorporating ANSI B175.1 by reference would provide loggers with additional protection because it establishes minimum performance criteria for chain brakes, as well as other safety requirements.

Unpersuaded by Homelite's arguments, we conclude that OSHA's determination that chain brakes should be required on all chain saws satisfies the substantial evidence standard. Many representatives of logging companies and safety organizations advocated chain brakes. See id. at 51,691. Based on their experiences, these commenters reported that chain brakes had been the most effective safety device against kickback injuries. Although these commenters lacked statistics to support their claims, OSHA reasonably could have relied on the experiences of members of the industry affected by the standard, especially if, as here, statistical data is sparse.

In addition to advocating chain brakes, many commenters pointed out deficiencies in the other safety devices permitted by ANSI B175.1. Many commenters noted that although bar or nose tip guards, reduced kickback guide bars, and reduced kickback chains effectively reduce the likelihood and severity of kickback injuries when used, they are easily removed from chain saws. See id. at 51,690-91. Furthermore, these devices prevent certain logging maneuvers and tend to reduce cutting efficiency, giving loggers incentives to remove or replace them. Based on these comments, we conclude that OSHA reasonably could have determined that chain brakes would be more effective than the other devices because a logger would be less likely to disengage or remove a safety device that did not interfere with the chain saw's performance.

III.

Because the majority of commenters advocated chain brakes and criticized other safety devices, we conclude that substantial evidence supports OSHA's determination that chain brakes should be required

on all chain saws used by professional loggers. Accordingly, we deny the petition for review.

<u>DENIED</u>

9